

**INFINITI FINANCIAL SERVICES®**

**Motor Vehicle Lease Agreement With Arbitration Clause — Florida**

**Signature LEASE®**

### 1. PARTIES

**LESSOR**

| INFINITI OF TAMPA | (813) 879-3223 | 9/17/2019 |
|---|---|---|
| NAME OF LESSOR (DEALER) | LESSOR TELEPHONE NUMBER | LEASE DATE |
| 4600 N Dale Mabry Hwy | Tampa, FL, 33614 | 05006 |
| STREET ADDRESS | CITY, STATE, ZIP CODE | IFS DEALER NUMBER |

**LESSEE & CO-LESSEE**

| ECHO J. ALONZO | N/A | N/A |
|---|---|---|
| NAME OF LESSEE | NAME OF CO-LESSEE | NAME OF DRIVER (IF LESSEE IS A BUSINESS) |
| 1120 E KENNEDY BOULEVARD APT 1021 | TAMPA, FL, HILLSBOROUGH | 33602 |
| LESSEE STREET ADDRESS | CITY, STATE, COUNTY | ZIP CODE |
| 1120 E KENNEDY BOULEVARD APT 1021 | TAMPA, FL | 33602 |
| LESSEE MAILING ADDRESS (IF DIFFERENT FROM ABOVE) | CITY, STATE, COUNTY | ZIP CODE |
| 1120 E KENNEDY BOULEVARD APT 1021 | TAMPA, FL, HILLSBOROUGH | 33602 |
| VEHICLE GARAGING ADDRESS (IF DIFFERENT FROM ABOVE) | CITY, STATE, COUNTY | ZIP CODE |

"You" and "your" refer equally to the Lessee and Co-Lessee (if any) signing this Lease. "We", "us" and "our" refer to the Dealer, or if this Lease is assigned, to Nissan-Infiniti LT ("NILT") and/or any other assignee. "Vehicle" refers to the Motor Vehicle described below, including attachments, equipment, the battery and accessories, including any charging accessories included with the vehicle. You agree to lease this Vehicle from us under the terms in this Lease. You understand that this is a Lease. You do not own this Vehicle, unless and until you exercise your option to purchase this Vehicle.

### 2. DESCRIPTION OF LEASED PROPERTY

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE IDENTIFICATION NUMBER (VIN) |
|---|---|---|---|---|
| 2019 | INFINITI | Q50 | 4DR SDN 3.0T LUXE | JN1EV7AP4KM514086 |

☒ New  ☐ Used  
27 ODOMETER READING  
BLACK - N/A COLOR/KEY CODE #  
☐ Charging Accessories  
Primary Use: ☐ Commercial  ☒ Personal, Family or Household

### 3. FEDERAL CONSUMER LEASING ACT DISCLOSURE BOX

**Amount Due At Lease Signing or Delivery** (From Section 4, itemized below)  
$1,322.67

**Monthly Payments**  
Your first monthly payment of $629.00 is due on signing, followed by 38 payments of $629.00 due on the 17th of each month, beginning on 10/17/2019. The total of your monthly payments is $24,531.00.

**Other Charges*** (Not part of your monthly payment)  
a) Disposition Fee (if you do not purchase the Vehicle) $395.00  
b) N/A + $ N/A  
c) N/A + $ N/A  
d) Total = $395.00  
*In addition, you may have to pay excess wear and use and mileage, if any.

**Total of Payments**  
(The amount you will have paid by the end of the Lease.)  
$25,619.67

### 4. ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

**Amount Due At Lease Signing or Delivery**
- a) Capitalized Cost Reduction including any net trade-in allowance  $ 414.48
- b) First Monthly Payment  + $ 629.00
- c) Refundable Security Deposit  + $ N/A
- d) Title Fees  + $ 98.00
- e) Registration Fees  + $ 112.69
- f) Tax on Capitalized Cost Reduction  + $ N/A
- g) Sales Tax Paid in Advance  + $ N/A
- h) FL.FEES-68.5  + $ 68.50
- i) N/A  + $ N/A
- j) N/A  + $ N/A
- k) N/A  + $ N/A
- l) N/A  + $ N/A
- m) N/A  + $ N/A
- n) N/A  + $ N/A
- o) Total  = $ 1,322.67

**How The Amount Due at Lease Signing or Delivery Will be Paid**
- I) Net Trade-In Allowance  $ N/A
- II) Rebates and Non-Cash Credits  + $ 1,322.67
- III) Amount To Be Paid in Cash  + $ N/A
- IV) Total  = $ 1,322.67

### 5. YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW

a) **GROSS CAPITALIZED COST.** The agreed upon value of the Vehicle ($38,640.65) and any items you pay over the lease term such as taxes, fees, service contracts, insurance and any outstanding prior credit or lease balance. If you want an itemization of this amount, please see Section 7.  $ 40,540.15

b) **CAPITALIZED COST REDUCTION.** The amount of any net trade-in allowance, rebate, non-cash credit or cash you pay that reduces the gross capitalized cost.  − 414.48

c) **ADJUSTED CAPITALIZED COST.** The amount used in calculating your base monthly payment.  = 40,125.67

d) **RESIDUAL VALUE.** The value of the Vehicle at the end of the Lease used in calculating your base monthly payment.  − 20,371.20

e) **DEPRECIATION AND ANY AMORTIZED AMOUNTS.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the lease term.  = 19,754.47

f) **RENT CHARGE.** The amount charged in addition to the depreciation and any amortized amounts.  + 2,854.61

g) **TOTAL OF BASE MONTHLY PAYMENTS.** The depreciation and any amortized amounts plus the rent charge.  = 22,609.08

h) **THE NUMBER OF PAYMENTS IN YOUR LEASE**  ÷ 39

i) **BASE MONTHLY PAYMENT**  = 579.72

j) **MONTHLY SALES, USE OR LEASE TAX**  + 49.28

k) **MONTHLY LUXURY TAX**  + N/A

l) **TOTAL MONTHLY PAYMENT**  = $ 629.00

This is not the Authoritative Copy.

### 6. IMPORTANT TERMS

**EARLY TERMINATION.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be. See Section 14.

**EXCESSIVE WEAR AND USE.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of __12000__ miles per year at the rate of 25 cents per mile. See Section 20. ☐ If this box is checked, this mileage includes __N/A__ miles over the term of the Lease purchased at 10 cents per mile, which is included in your monthly payment. There will be no refund for unused miles, including any additional miles purchased by you.

**PURCHASE OPTION AT END OF LEASE TERM.** You have an option to purchase the Vehicle at the end of the lease term for $ __20,371.20__, and a Purchase Option Fee of **$300.00**. See Section 15.

**OTHER IMPORTANT TERMS.** This Lease contains additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

### 7. ITEMIZATION OF GROSS CAPITALIZED COST

The following items you will pay over the lease term and are in your monthly payment:

| | | |
|---|---|---|
| a) Agreed upon value of the Vehicle | $ | 38,640.65 |
| b) Up-Front Sales Tax, if applicable | + | N/A |
| c) Title, License and Registration | + | N/A |
| d) Acquisition Fee | + | 700.00 |
| e) Service Contract(s) and/or Maintenance Contract(s) (See Section 11) | + | N/A |
| f) Credit Life and/or Disability Insurance (See Section 11) | + | N/A |
| g) Prior Credit or Lease Balance | + | 400.50 |
| h) DOC.FEE-799 | + | 799.00 |
| i) N/A | + | N/A |
| j) N/A | + | N/A |
| k) N/A | + | N/A |
| l) N/A | + | N/A |
| m) **Total Gross Capitalized Cost** | = | 40,540.15 |

### 8. VEHICLE WARRANTIES

This Vehicle is covered by any warranty, extended warranty, service contract or maintenance contract indicated below:

☒ Standard New Vehicle Limited Warranty provided by the manufacturer or distributor of this Vehicle.
☐ Mechanical Breakdown Protection (MBP), a service contract for the repairs of certain major mechanical breakdowns of this Vehicle and related expenses.
☐ Maintenance Contract, a contract for regularly scheduled care and maintenance of this Vehicle.
☐ Used Vehicle Limited Warranty
☐ N/A

EXCEPT AS EXPRESSLY PROVIDED UNDER THIS LEASE, WE OFFER NO EXPRESS OR IMPLIED WARRANTIES WITH RESPECT TO THIS VEHICLE. WE MAKE NO IMPLIED WARRANTY OF MERCHANTABILITY. THE LESSOR UNDERTAKES NO RESPONSIBILITY FOR THE QUALITY OF THE GOODS EXCEPT AS OTHERWISE PROVIDED IN THIS CONTRACT. THE LESSOR ASSUMES NO RESPONSIBILITY THAT THE GOODS WILL BE FIT FOR ANY PARTICULAR PURPOSE FOR WHICH YOU MAY BE LEASING THESE GOODS, EXCEPT AS OTHERWISE PROVIDED IN THE CONTRACT.

### 9. TRADE-IN VEHICLE

Year __2018__ Make __JEEP__ Model __RENEGADE__
Net Trade-In Allowance $ __N/A__

### 10. ESTIMATED FEES AND TAXES

The estimated total amount you will pay for official and license fees, registration, title and taxes, including personal property taxes, over the term of your Lease, whether included with your monthly payments or assessed otherwise is $ __2,675.16__. The actual total of fees and taxes may be higher or lower depending on the tax rates in effect or the value of the leased property at the time a fee or tax is assessed.

### 11. OPTIONAL INSURANCE, COVERAGES, AND WARRANTIES

These products are not required to enter into this Lease and will not be provided unless you sign below. If insurance coverages and/or warranties are purchased by you, these are shown in a notice given to you on this date. These products may not be available in some states.

a) **Credit Life Insurance** — $ N/A PREMIUM
INSURER: N/A — $ N/A INITIAL COVERAGE AMOUNT
INSURED(S): N/A — LESSEE INITIALS / CO-LESSEE INITIALS

b) **Credit Disability Insurance** — $ N/A PREMIUM
INSURER: N/A — $ N/A MONTHLY COVERAGE AMOUNT
INSURED(S): N/A — LESSEE INITIALS / CO-LESSEE INITIALS

c) **Mechanical Breakdown Protection** — $ N/A CHARGE
(Covers parts of Vehicle up to sooner of __N/A__ months or __N/A__ miles.)
PROVIDER: N/A — LESSEE INITIALS / CO-LESSEE INITIALS

d) **Maintenance Contract** — $ N/A CHARGE
PROVIDER: N/A — LESSEE INITIALS / CO-LESSEE INITIALS

e) N/A — $ N/A CHARGE
PROVIDER: N/A — LESSEE INITIALS / CO-LESSEE INITIALS

f) N/A — $ N/A CHARGE
PROVIDER: N/A — LESSEE INITIALS / CO-LESSEE INITIALS

g) N/A — $ N/A CHARGE
PROVIDER: N/A — LESSEE INITIALS / CO-LESSEE INITIALS

**Total Premiums/Charges** — $ N/A

---

**NOTICE**
The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by sections 324.021(7) and 627.736, Florida Statutes.

---

**NOTICE**
If a documentary fee, document preparation fee, predelivery service fee or similarly described fee is disclosed in section 4 or section 7: This charge represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale.

This is not the Authoritative Copy.

## Additional Terms and Conditions

### ENDING YOUR LEASE

### 12. Vehicle Return
When your Lease terminates, whether early or as scheduled, you will return the Vehicle to an Infiniti dealer or other location we specify. You will complete a statement of this Vehicle's mileage at termination as required by federal law. If you keep possession of this Vehicle past the end of the lease term, you will continue to pay the monthly payments, but you agree that you have no right to keep this Vehicle unless you enter into a written agreement with us extending the lease term. You will pay us for any damages we suffer because you failed to return this Vehicle to an Infiniti dealer or other location we specify or because you failed to return this Vehicle at the end of the lease term. We may determine our damages in one of the following two ways at our election and in our sole discretion: a) by charging you the Total Monthly Payment for each month the Vehicle is not returned as required plus any other amounts due under Sections 13 and 25; or b) by charging you for amounts due under the formula provided in Section 14 and any amounts due under Sections 13 and 25.

### 13. Scheduled Termination
The scheduled term of your Lease is the number of months corresponding to the number of monthly payments identified in Sections 3 and 5. At the end of the lease term, you will return this Vehicle and pay us immediately:
a) a Disposition Fee equal to the amount disclosed in Section 3 which we will waive if this Lease is not in default and you concurrently enter a new lease or retail contract financed by IFS; plus
b) all past-due monthly payments, and other charges under this Lease; plus
c) any amounts owed as a result of excessive wear and use, as disclosed in Section 20; plus
d) any Excess Mileage Charge at lease maturity, or an Excess Mileage Charge for the period for which this Lease was in effect pro-rated monthly, as disclosed in Section 6; plus
e) any taxes related to the termination.

### 14. Early Termination
a) **Conditions for YOUR early termination.** You may terminate this Lease before the end of the lease term, effective on the due date of a monthly lease payment if you return the Vehicle, you are not in default, you have paid at least 12 monthly payments, you give us at least 30 days prior written notice and you pay us the amount disclosed in Section 14.c).
b) **Conditions for OUR early termination.** We may terminate this Lease before the end of the lease term under Section 26 or if you are in default as described in Section 25.
c) **Amounts you will owe at Early Termination.** If this Lease is terminated before the end of the lease term, under Section 14.a) or Section 14.b), then you will pay us:
   I) the amounts disclosed in Section 13; plus
   II) an Early Termination Charge equal to the difference, if any, between the Adjusted Lease Balance and this Vehicle's Fair Market Wholesale Value or, if we do not terminate this Lease under Section 14.b), an Early Termination Charge equal to the sum of the Base Monthly Payments not yet due, if less; plus
   III) if you are in default, the amounts disclosed in Section 25.
d) For an electric vehicle, if we abandon our interest in the charging accessories, we may exclude the value of the charging accessories from the determination of Fair Market Wholesale Value.

"Adjusted Lease Balance" is a charge in today's dollars ("today" being the date the Lease is terminated) for Base Monthly Payments not yet due and the Residual Value of the Vehicle. Our method of calculating "today's dollars" is the Constant Yield Method, a generally accepted accounting formula.

"Fair Market Wholesale Value" is the wholesale value assigned by us in a commercially reasonable manner in accordance with accepted practices in the automobile industry for valuation of used vehicles, or by a written agreement as to the Vehicle's value signed by you and us. If you disagree with the value we assign to the Vehicle, you may obtain, at your own expense, within 10 days after you return the Vehicle, a professional appraisal of this Vehicle's wholesale value or comparable value made by an independent third party agreeable to both you and us (the "Professional Appraisal"). If a Professional Appraisal is used to value the Vehicle, no amounts disclosed in Section 20 will be due from you.

In the event early termination of this Lease occurs at your election pursuant to Section 14.a), you hereby agree that the Fair Market Wholesale Value is the wholesale value, loan value or comparable value listed for the Vehicle, at the time of the early termination, in one of the following used vehicle valuation guides, at our election: National Automobile Dealers Association (NADA), Kelley or Black Book.

### 15. Purchase Option
You have the option to purchase this Vehicle "AS IS" from the originating dealer, or other location we specify, in cash for the Purchase Option Price, plus any official fees and taxes, vehicle inspection costs required in connection with the purchase, and a Purchase Option Fee of $300, which fees, taxes and costs are not included in the Purchase Option Price agreed to in Section 6. If you purchase the Vehicle at the end of the lease term, the Purchase Option Price will be the Residual Value shown in Section 5.d). If you purchase the Vehicle before the end of the lease term, the Purchase Option Price will be the Adjusted Lease Balance disclosed in Section 14). In either case, you must also pay other amounts due under this Lease at the time of purchase.

### VEHICLE INSURANCE, MAINTENANCE, PAYMENTS AND USE

### 16. Insurance
You are responsible for insuring this vehicle for the types and amounts of coverage ("Required Insurance") during the lease term: a) Comprehensive, including fire and theft insurance if this Vehicle is a car, or fire, theft and combined additional coverage if this Vehicle is a truck, with a maximum deductible of $1,000; b) Collision insurance with a maximum deductible of $1,000; c) Liability insurance covering property damage, and bodily injury, in amounts greater than or equal to the minimum coverage amounts required by state law. Your insurance policy must name us as loss payee on coverages (a) and (b) and provide us with primary coverage as an additional insured on coverages (c) and (d). You will provide us with proof of insurance at our request. Your insurance policy must provide us with at least 30 days notice of any cancellation, reduction or other material change in coverage. You appoint us as your attorney-in-fact to arrange for and procure payment of insurance loss proceeds directly with your insurance carrier(s) and to endorse, present and collect insurance loss proceeds checks.

**NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE.**

### 17. Late Charge, Returned Check Charge, Fines, and Fees
If any monthly payment is not received in full by us within 15 days after its due date, you will pay a late charge of 5% of the monthly payment due or $25.00, whichever is less or as allowed by state law, plus any applicable taxes. Payments shall be applied to the most past-due payment first. If any payment (including any electronic funds transfer) you make to us is not honored, or is charged back to us, in addition to any late charge, you will pay us a $10.00 service charge, or such other charge as allowed by law, plus any applicable taxes. You will pay when due any official fee or fine imposed on this Vehicle, such as a toll charge, parking ticket, traffic or toll violation. Should we have to pay any such fee or fine on your behalf, you will pay us the amount of the fine or fee plus a $20.00 administrative charge, or such other charge as allowed by law, plus any applicable taxes.

### 18. Official Fees and Taxes
You will pay when due all official fees and taxes, including registration, title and license fees, and personal property taxes related to this Vehicle or this Lease, which are incurred during the lease term, even if they are assessed after this Lease terminates. Should we have to pay any official fee or tax on your behalf, you will pay us the amount of the official fee or tax, and any interest or penalties assessed. You may also agree to pay personal property taxes in advance of the applicable due date, by mutual settlement of an estimated amount with us.

### 19. Vehicle Maintenance and Use
**You agree to maintain this Vehicle at your own expense. You agree to follow the owner's manual and maintenance schedule and to make all necessary repairs and replacement of parts, which includes maintaining adequate records of vehicle maintenance. Failure to properly maintain this Vehicle in accordance with the owner's manual and/or maintenance schedule may result in charges in addition to excessive wear and use charges.** This Vehicle may not be used for any illegal purpose or to transport people or goods for hire. Except for occasional and incidental use (not to exceed a total of 3 days in any month) by other licensed, qualified, insured operators with your permission, you shall retain possession of this Vehicle. Except as allowed in this Section, you will not alter or install any equipment upon this Vehicle and will pay the amount it would cost to restore this Vehicle to its original condition. You may elect to have an airbag on/off switch installed in the Vehicle, at your expense, if you have received prior written approval from the National Highway Transportation Safety Administration ("NHTSA") and you provide us written notice (including a copy of the NHTSA approval and the dealer's written confirmation of the installation) within 30 days after installation. The switch must be installed by an authorized Infiniti dealer using Infiniti parts. If an airbag on/off switch is installed, you release us from any claims, losses or damages resulting from such installation, improper installation or your use or improper use of the switch. For an electric vehicle, you agree that we own the battery and that you may replace it only with our permission and only with a genuine Infiniti battery specified for use with the vehicle. Any such replacement battery will be deemed an accession to the vehicle and our property. We may elect to abandon any interest we have in charging accessories. You agree to indemnify us for any loss, liability or expense arising from the use or condition of this Vehicle. You agree to keep this Vehicle free from liens and encumbrances. If you leased this Vehicle in the 48 contiguous United States, you will not remove this Vehicle from these 48 states without our prior consent. If you leased this Vehicle in Alaska, Hawaii, or Guam, you will not remove this Vehicle from that state or territory without our prior consent. If you remove this Vehicle from your state of residence or the garaging address identified in this Lease such that new registration or licensing will be required, you will notify us immediately in writing and will bear all related expenses. You will provide and complete any document necessary to comply with any applicable federal, state or local law regarding this Vehicle or this Lease.

### 20. Excessive Wear and Use
You are responsible for all repairs to this Vehicle that are not the result of normal wear and use. At the end of the lease term or at early termination, you will pay us the amount it would cost for the repairs (except in the case when a Professional Appraisal as set forth in Section 14 is used to value the Vehicle). These repairs include, but are not limited to, the costs necessary to:

a) REPAIR: inoperative mechanical parts including power accessories; dents, scratches, chips or rusted areas on the body; mismatched paint; broken windows or inoperative window mechanisms; broken headlight lenses or sealed beams; dents, cuts, scratches or gouges in the bumper; broken grilles or dents in the grilles; single dents or a series of small dents on other trim parts, including headlight and taillight bezels; or seats, seat belts, head lining, door panels or carpeting that are torn or are damaged beyond ordinary wear and use or are burned.

b) REPLACE: any windshield damaged with chips, cracks or bull's-eyes; any tire not part of a matching set of 5 tires (or four with an emergency spare), or tires with less than 1/8" of tread remaining at the shallowest point, or tires which are not a matching set of tires of comparable type and quality to the tires furnished with this Vehicle upon commencement of this Lease; missing parts, accessories and adornments, including bumpers, ornamentation, aerials, hubcaps, chrome stripping, rearview mirrors, radio and stereo components, or emergency spare.

You agree that upon notice from us and as allowed by State law, you will make the Vehicle available to us prior to the scheduled termination of this Lease, at a reasonable time and place to be designated by us, so that we may inspect the Vehicle for purposes of determining

This is not the Authoritative Copy.

excessive wear and use. You agree that any assignee of this Lease is not bound by any statements or representations made by any dealer regarding excess wear and use or the vehicle condition upon return. You agree that for the purposes of determining excess wear and use the only inspection(s) that will be used is (are) the inspection(s) made by the assignee or its designated inspection contractor. If you fail to adhere to manufacturer maintenance and inspection requirements, we may charge you for any resulting excessive wear and use or damages to the vehicle, including, but not limited to, any loss in value attributable to any manufacturer cancellation or reduction of warranties. **Damage to the Vehicle which is concealed or obscured, such as damage to the engine resulting from a failure to maintain the Vehicle, may result in charges being assessed to you upon discovery, even if wear and use charges have previously been assessed.**

## ADDITIONAL INFORMATION

### 21. Notices and Communication
Unless you give prior notice of a change in an address, we may send any notices to one or more of the Lessee's addresses shown on this Lease. Any notice will be deemed sufficiently given to a Co-Lessee if sent to the Lessee's address, unless you give us written notice of a separate address. You will notify us within 30 days of any address change. To the extent permitted by law, you consent that we, our assignees, and our agents may contact you for servicing and collection purposes, at any telephone number or cell phone number you have provided or may provide to us, by any means we select, including an automatic telephone dialing system, text messaging, and/or an artificial or pre-recorded voice. To the extent permitted by law, you consent that we may monitor and we may record telecommunications between us for quality control purposes.

### 22. Security Deposit (if collected)
We may use the security deposit to offset any amounts that you owe under this Lease. If you perform all of your obligations under this Lease, the security deposit will be returned to you after lease termination. No interest, increase or profits will accrue or be due to you. We have no duty to segregate the security deposit and do not have a fiduciary duty to you in regards to the security deposit.

### 23. Security Interest
Unless otherwise precluded by applicable law, you give us a security interest in this Vehicle or in proceeds, cancellation refunds or other rights under any contract issued with respect to this Vehicle, this Lease or any addendum to this Lease, including, without limitation, insurance contracts, maintenance contracts, repair contracts and extended warranty or service contracts.

### 24. Assignment
We may assign our interest in this Lease without prior notice and without your consent. If this Lease is assigned to NILT, Infiniti Financial Services ("IFS") acts as servicer. **YOU AGREE THAT YOU HAVE NO RIGHT TO ASSIGN, TRANSFER OR SUBLEASE ANY OF YOUR RIGHTS UNDER THIS LEASE.**

### 25. Default and Payments
You will be in default if a) you do not make a payment when due; b) any information on your or a guarantor's credit application is false; c) you do not maintain insurance coverage required by this Lease; d) you do not timely or properly perform any promise under this Lease; e) you or a guarantor become subject to bankruptcy or insolvency proceedings; f) you die; g) you commit any other act constituting default under applicable law. In the event of default, we may terminate this Lease and, after giving any legally required notice: (i) charge you for early termination liability pursuant to Section 14; (ii) repossess this Vehicle as allowed by law; (iii) charge you for our costs of such repossession, storing, transporting and disposing of this Vehicle; (iv) charge you for our costs of collection, any court costs and attorneys' fees to the extent permitted by applicable law; (v) sue you for damages and to recover this Vehicle; (vi) pursue any other legally permitted remedy; and/or (vii) charge you interest at the rate of 6% per annum or such other rate as may be allowed by applicable law on any termination liability owed under Sections 13 and 14. If your vehicle is equipped with a telematics control unit, any built-in device, or any add-on device, that can communicate geolocation information remotely, you agree that we may use the location information to assist in recovering the vehicle. Unless otherwise required by law, we are not required to give you prior notice of our termination of this Lease pursuant to this section and your resulting early termination liability as determined in Section 14. To the extent permitted by law, you agree that if we accept moneys in sums less than those due, accept payments which are received after their scheduled due dates, or make extensions of due dates of payments under this Lease, doing so will not be a waiver of our right to enforce the lease terms as written as to any amounts due thereafter. We may accept payments with "Payment in Full," similar language or other restrictive endorsements without being bound by such language or waiving any of our rights.

### 26. Damage, Loss or Potential Loss of This Vehicle
You are responsible for the risk of loss, damage or destruction of this Vehicle during the lease term and until you return this Vehicle to us as required above. If this Vehicle is damaged or destroyed in an accident or other occurrence or confiscated by any governmental authority or is stolen or abandoned or subjected to potential loss, you will immediately notify us and we may terminate this Lease pursuant to the terms of this Lease. If this Vehicle is stolen (and not recovered) or destroyed, we will accept insurance loss proceeds in full satisfaction of your early termination liability if you are in compliance with the following: 1) your insurance obligations under this Lease are satisfied; 2) your policy covers the casualty and you have paid the deductible required by the policy; and 3) your Lease is not in default. If the insurance loss proceeds exceed your early termination obligations, then the excess will not be refunded to you. Any capitalized cost reduction made by you will not be refunded in the event of a total loss. If the Vehicle is a total loss, there is no Purchase Option, and you have no right to retain the Vehicle for salvage. If you owe any past due payments or other amounts under this Lease, we may use your security deposit to offset such amounts. All damages which do not result in a total loss of the Vehicle must be repaired. We may require proof of satisfactory repairs before agreeing to or endorsing the payment of insurance proceeds to you. This may include requiring an inspection of the vehicle. Repairs which involve severing the Vehicle into two or more parts are not permitted. Only Genuine Infiniti parts may be used to repair the Vehicle. Repairing the Vehicle with used parts may void the manufacturer's warranty or any additional warranties, service contracts or maintenance contracts covering the Vehicle. If used parts are installed to repair the Vehicle, the used parts must be Genuine Infiniti Remanufactured parts, be of the same model year or newer than the parts being replaced and, if applicable, the mileage of the used part must be the same or less than the mileage of the Vehicle prior to its damage. Used parts must not have been previously damaged or defective. Used body panels cannot replace damaged body panels.

### 27. Indemnity
You agree to indemnify us from, and to pay on our behalf, any claim, loss or liability (including damages, costs, expenses and legal fees) which arises from or is related to the use, maintenance or operation of the Vehicle. This Section will survive termination of this Lease and/or repossession of the Vehicle. Any insurance we provide is secondary to the Required Insurance.

### 28. Notices Regarding Assignments
If this Lease and the Vehicle are assigned to NILT, then:
(1) The Dealer is hereby notified that NILT has assigned to Nissan-Infiniti Services Co. (NISC) NILT's rights (but not its obligations) to acquire the Vehicle upon Lease inception; and
(2) The Dealer and Lessee are hereby notified that NILT's rights (but not its obligations) in the sale of the Vehicle, if the Vehicle is subsequently purchased from NILT, will be assigned to NISC immediately prior to the purchase of the Vehicle. If the Lessee is purchasing the Vehicle, the Lease and the Vehicle are sold to a dealer, who will then sell the Vehicle to the Lessee.

### 29. ARBITRATION CLAUSE – IMPORTANT – PLEASE REVIEW – AFFECTS YOUR LEGAL RIGHTS
1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE, EXCEPT AS STATED BELOW, BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Except as otherwise stated below, any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, lease or condition of this vehicle, this Lease agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. THE CLAIM OR DISPUTE IS TO BE ARBITRATED BY A SINGLE ARBITRATOR ON AN INDIVIDUAL BASIS AND NOT AS A CLASS ACTION. YOU EXPRESSLY WAIVE ANY RIGHT YOU MAY HAVE TO ARBITRATE A CLASS ACTION. You may choose one of the following arbitration organizations, and its applicable rules, to conduct the arbitration: JAMS (800 352-5267, www.jamsadr.com), the American Arbitration Association (800 778-7879, www.adr.org), or any other organization subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statutes of limitation. Unless applicable law provides otherwise, the arbitration hearing shall be conducted in the federal district in which you reside unless the Dealer originating this Lease is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service and case management fee, your arbitrator and hearing fee and any arbitration appeal fees you incur all up to a maximum of $5,000, unless the law requires us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims are frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this clause, then the provisions of this clause shall control. The arbitrator's award shall be final and binding on all parties, except that you may appeal any arbitrator's award pursuant to the rules of the arbitration organization, and we may only appeal an award against us exceeding $100,000. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

You retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, and we agree to reimburse your filing fees for such proceedings. You and we retain any rights to self-help remedies, such as repossession. You also retain the right to seek individual injunctive relief in court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause does not apply to any claim or dispute relating to excessive wear and use, including collection or payment disputes. This Arbitration Clause shall survive any termination, payoff or transfer of this Lease. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable.

This is not the Authoritative Copy. Customer

## SIGNATURES

### Electronic Contracting and Signature Acknowledgment

You agree that (i) this contract is an electronic contract executed by you using your electronic signature; (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature; and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract; (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract; and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

### Lessee

**Notice regarding Arbitration:** By signing below, you acknowledge that this Lease contains an Arbitration Clause and that you have read it. **READ THE ARBITRATION CLAUSE IN SECTION 29 BEFORE SIGNING HERE.**

Lessee signature: _[signed]_____  Co-Lessee signature: _____

This Lease is the entire agreement and can only be changed by written agreement between the Lessee, Co-Lessee (if applicable) and Dealer, NILT, or any other assignee, if this Lease is assigned. There are no other written or verbal agreements. Any provision of this Lease which is invalid, illegal or unenforceable shall be ineffective without affecting in any way the remaining provisions. All lessees and guarantors are jointly and severally liable.

**NOTICE: THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.**

YOU HAVE READ THIS ENTIRE LEASE AND RECEIVED A COMPLETED COPY OF THIS LEASE BEFORE SIGNING BELOW.

By signing below, you acknowledge that:
- This Lease is completely filled out;
- You have read this entire Lease carefully and agree to all of its terms.

**CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

| _[signed]_ | N/A | N/A |
|---|---|---|
| LESSEE SIGNATURE | BUSINESS NAME | NAME (PLEASE PRINT) |
| | | |
| CO-LESSEE SIGNATURE | BY (SIGNATURE) | TITLE |

### Guarantor

For purposes of this section, I/we/my/our/me/us refers solely to Guarantor. I/We jointly, severally and unconditionally guarantee the performance of all payment and other obligations of the Lessee, under this Lease. Upon any default by Lessee, Lessor may, at Lessor's option, proceed immediately against me/us without first proceeding against Lessee, any other guarantor or taking possession of and disposing of this Vehicle. My/Our liability is primary and will be unaffected by any settlement, compromise, extension, renewal or modification of this Lease or by any release or discharge of Lessee or other guarantor. I/We waive all notices and all rights to demands and presentments. This guarantee inures to the benefit of Lessor's successors and assigns.

| | | |
|---|---|---|
| GUARANTOR SIGNATURE | GUARANTOR SIGNATURE | GUARANTOR SIGNATURE |
| N/A | N/A | |
| PRINT NAME | PRINT NAME | PRINT NAME |

### Lessor

a) Lessor accepts the terms of this Lease; and
b) Lessor assigns and transfers to Nissan-Infiniti LT ("NILT") all of Lessor's rights, title and interest in and to this Lease including all amounts payable thereunder, pursuant to the terms of the applicable written Retailer Agreement between Lessor and Infiniti Financial Services ("IFS"), the benefits of which have been assigned by IFS to NILT for purposes of leases assigned to NILT. Any guaranty by Retailer is made notwithstanding the terms of the Retailer Agreement.

By signing below, the Lessor accepts the terms and conditions of this Lease.

| INFINITI OF TAMPA | _[signed]_ | FI |
|---|---|---|
| LESSOR (PRINT NAME) | LESSOR SIGNATURE | TITLE |